SUSAN M. CHEHARDY, Judge.
 

 | ¡.The issue on this appeal is interpretation of the language of a trust document regarding disbursement of the trust funds. We affirm the district court’s ruling that held the trust funds should be last in a hierarchy of payment sources for the needs of the child involved.
 

 The suit arises in post-divorce child support proceedings between Susan Eby Nelson (now Susan Eby Brown, but referred to herein as “Ms. Nelson”) and Robert Allan Nelson (“Mr. Nelson”). The parties were married in December 1990 and two children were born of their marriage, both of them daughters, Regan and Sydney. Sydney Nelson was born with cerebral palsy as a result of medical malpractice. Sometime prior to August 4, 2000, the parties entered into a settlement agree
 
 *871
 
 ment and judgment with the Louisiana Patient’s Compensation Fund (“PCF”), settling all their malpractice claims.
 
 [1]
 

 As part of the settlement the Nelsons received $400,000.00. On August 4, 2000, the Nelsons created the Sydney L. Nelson Special Needs Trust (hereafter “the Special Needs Trust”), funded with the settlement proceeds, with Ms. Nelson and Mr. Nelson as co-trustees. The Special Needs Trust was established in | -¡accordance with federal law to distribute money for Sydney’s special needs, while maintaining her eligibility for certain governmental benefits.
 

 The parties were divorced on March 11, 2003. On February 26, 2004, the parties signed a Consent Judgment Relating to Support, which was amended by the parties on October 6, 2004. All references to “Consent Judgment” hereafter pertain to the Amended Consent Judgment Relating to Support, dated October 6, 2004.
 

 On February 23, 2007, Ms. Nelson filed a Rule to Show Cause against Mr. Nelson, seeking to compel him to reimburse certain unpaid school and medical expenses incurred on Sydney’s behalf. These included, among other things, purchase of an electric wheelchair, a wheelchair van, wheelchair van and lift maintenance, and medical equipment.
 

 According to Ms. Nelson, Mr. Nelson paid all of Sydney’s medical expenses not covered by the PCF or private insurance until April 2006, when he abruptly stopped paying. Ms. Nelson thereupon filed the rules to show cause.
 

 At a conference on January 29, 2009, the domestic hearing officer recommended that a hierarchy of medical payments be established, in the following order: First, the PCF; second, private insurance; third, the Special Needs Trust; last, Mr. Nelson.
 

 Ms. Nelson objected to the hearing officer’s recommendations, asserting that the Consent Judgment made Mr. Nelson the primary obligor for all unreimbursed medical expenses. She argued that the Consent Judgment’s provision for the Special Needs Trust’s earnings up to $20,000 per year to be paid to Ms. Nelson was not for Sydney’s general special needs, but as a salary to Ms. Nelson for her services as Sydney’s caregiver. Ms. Nelson pointed out that the transcript of the proceeding at which the Consent Judgment was confect-ed shows that Mr. Nelson’s |4counsel stated that the Trust proceeds were to be paid to Ms. Nelson “for Ms. Nelson’s benefit.”
 
 [2]
 

 On February 12, 2009, the district court heard Ms. Nelson’s objections to the recommendations of the domestic hearing officer’s ruling of January 29, 2009. The court set aside the hierarchy of payments recommended by the hearing officer, and ruled that Sydney’s medical expenses shall be paid according to the following hierarchy: first, the PCF, if applicable; second, private insurance; third, Mr. Nelson; last, the Special Needs Trust. Mr. Nelson appeals.
 

 On appeal Mr. Nelson asserts the trial court erred in holding that Sydney Nelson’s medical expenses should be paid according to a hierarchy that requires Mr. Nelson to exhaust his private funds before utilizing the Special Needs Trust.
 

 Mr. Nelson argues the express language of the Consent Judgment and the Act Creating Irrevocable Trust runs contrary to the hierarchy articulated in the March 11,
 
 *872
 
 2009 judgment. He asserts the Consent Judgment provides a hierarchy for Sydney’s medical payments that does not obligate Mr. Nelson to exhaust his private funds prior to utilizing the Special Needs Trust for its intended purpose; that the hierarchy in the Consent Judgment is in harmony with Section 3.1 of the Special Needs Trust; and that the hierarchy within the Consent Judgment is consistent with the purpose of the Special Needs Trust and does not create any undue burden on the Special Needs Trust.
 

 The trust document sets out its purpose as follows:
 

 Purpose: This trust is established pursuant to 42 U.S.C. § 1396 p(d)(4)(A) for the beneficiary, a disabled person as defined under the Social Security Act. The purpose of this trust is to maximize the resources available for the beneficiary by providing for those supplemental needs of the beneficiary without jyeopardizing the beneficiary’s eligibility or continued qualification under such existing and future programs.
 

 Section 3.1 of the Special Needs Trust document delineates the types of distributions that were proper under the trust document:
 

 The following enumerates the kinds of supplemental, non-support disbursements that are appropriate for the Trustees to make from this trust or for the benefit of the beneficiary, but such examples are not exclusive:
 
 medical, dental, and diagnostic work and treatment for which there are not private or public funds otherwise available;
 
 medical procedures that are desirable in the Trustee’s discretion even though they may not be necessary for life saving; supplemental nursing care and rehabilitation services; differentials in cost between housing and shelter for shared private rooms in institutional settings; appropriate care for the beneficiary that assistance programs may not or do not provide; expenditures for travel, companionship and cultural experiences, including but not limited to specially designed cars or vans to accommodate the beneficiary’s disabilities, and computers and assistive technologies. [Emphasis added.]
 

 The Consent Judgment provides in pertinent part as follows:
 

 IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Susan Nelson will be entitled to receive and use the net income from the Special Needs Trust held for the benefit of Sydney Nelson accruing after January 1, 2004 in an amount up to Twenty Thousand Dollars ($20,000) annually. For purposes of this use, “net income” is defined as all income less expenses, as calculated monthly. The parties are co-trustees of that account and are joint signatories on all checks and distributions from the account. On the fifteenth day of each month, $1,666.67 will be transferred from that account to Susan Nelson’s account at Am South Bank. If at any point either party determines that the net income from the Special Needs Trust will be less than $20,000 in the calendar year, the monthly distribution to Susan Nelson will be adjusted so that the total year-to-date payments do not exceed net income.
 

 The Consent Judgment also provides that Mr. Nelson will pay certain direct expenses of the children, as listed in the judgment, specifically including “3) The children’s health insurance and all uncovered medical expenses.”
 

 IrAt the hearing on the objections to the hearing officer’s recommendations, Ms. Nelson called an expert witness to interpret the language of the Special Needs Trust. Carole C. Neff, a board-certified specialist in estate planning and adminis
 
 *873
 
 tration with the law firm of Sessions, Fish-man, Nathan & Israel, L.L.P., testified that it is impermissible to use the Special Needs Trust to offset Mr. Nelson’s obligation to pay all of Sydney’s uncovered medical expenses:
 

 [A] Special Needs Trust ... is intended to supplement what would be available to this disabled person from other sources.... [T]he document just reiterates the fact that distributions are not [to] be made if they are available from other sources. And it makes reference to private fund[s] otherwise available. And I think ... the hearing officer’s hierarchy ... seems to require distributions to be made by the Special Needs Trust before private sources that are available are actually utilized. So I would say that would be in violation of the terms of the Special Needs Trust.
 

 Ms. Neff further testified that the hierarchy proposed by the hearing officer could disqualify the Trust as a Special Needs Trust, because it “could exhaust the trust so that there is nothing available for the beneficiary.”
 

 In her ruling the trial judge revised the hierarchy to place the Special Needs Trust last because “putting the trust ahead of other private sources is not in compliance with the terms of the Special Needs Trust.”
 

 Reviewing the language of the trust document and the language of the Consent Judgment, we find no error in the trial court’s determination. We find the parties contemplated that the Special Needs Trust would be used to cover expenses not covered by any other entity available. Despite Mr. Nelson’s reference to “express language” in the Consent Judgment that contradicts the hierarchy set out by the district court, we do not find the language expressly sets the Special Needs Trust ahead of Mr. Nelson as obligor for medical expenses. Rather, the Consent Judgment states Mr. Nelson is responsible for “all uncovered medical expenses.”
 

 17Accordingly, the judgment is affirmed. Costs of this appeal are assessed against the appellant.
 

 AFFIRMED.
 

 [1]
 

 .
 
 In re: Administration of Estate of Sydney Laws Nelson, a Minor,
 
 No. 559-423 on the docket of the 24th Judicial District Court, Parish of Jefferson.
 

 [2]
 

 . According to her brief, Ms. Nelson has ceased accepting payments from the trust income to avoid any possibility of the trust being disqualified as a Special Needs Trust under federal law.